IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>DENNIS TIMOTHY WOOD,<br><br>          Defendant. | 4:14-CR-3102<br><br>TENTATIVE FINDINGS |

The Court has received the presentence investigation report (PSR) in this case. The defendant has objected (filing 46) and moved for a downward departure (filing 49) and variance (filing 50).

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c) impose upon the United States the burden of proof on all Guidelines enhancements;

    (d) impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e) depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

    (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    Wood has objected (filing 46) and moved for a downward departure (filing 49) and variance (filing 50). Wood has pleaded guilty to conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. Wood was involved in a conspiracy with his co-defendant and brother-in-law, Howard John Barta, and an unknown conspirator, known to Wood and Barta only as "Smith." PSR at ¶ 44. Smith would contact a person who had advertised an item for sale on Craigslist and would agree to buy the item for a specific price. Smith would tell the seller that payment would be sent in the form of money orders payable to the seller. Then Smith would cause money orders totaling more than the sale price to be sent to the seller. Smith would contact the seller and explain that he had mistakenly sent too many money orders, and since they were already made payable to the seller, Smith could not take them back. Smith convinced the sellers to agree to deposit all of the money orders, keep the amount needed to pay for the item, and send the excess back to Smith. When the money orders were later determined to be fraudulent, the sellers would lose the amount that had been sent to Smith. PSR at ¶¶ 44–45.

Barta and Wood's role in the scheme was to mail the money orders to the victims. Smith would email the defendants the victims' names and addresses, with instructions on how many money orders to send. Smith also mailed the defendants the counterfeit money orders, typically with the victim's name and amount payable already printed. The defendants would then print envelopes, fill them with the specified number of money orders, and mail them to the victims. Smith would wire transfer about $400 a month to Barta's bank account to pay for envelopes and stamps. There was always some money left over, which Barta and Wood kept for themselves. *See* PSR at ¶¶ 44–45, 47–53.

### A. Timing of Wood's Involvement

Wood first objects to various portions of the PSR which identify his involvement in the present conspiracy as beginning in January 2010. Relatedly, Wood objects to the PSR's statement that he told investigators he had received packages from Smith beginning in

- 2 -

January 2010. *See* PSR at ¶ 53. Wood maintains that his involvement began no earlier than November 2010. In his plea agreement, Wood stipulated that his involvement in the conspiracy began in "approximately" January 2010. Filing 31 at 2. The government maintains that the "idea that Mr. Wood did not join the conspiracy until November 2010 is a recent invention by him." Filing 45 at 1. But at his change of plea hearing, he was careful to insist that his involvement did not begin until November 2010. *See* filing 41 at 18–23. So, the parties dispute when Wood's involvement began. To the extent this dispute matters, the Court will resolve it at sentencing.

### B. Loss Calculation

The Guidelines in this case provide for a base offense level of 7, with graduated increases based on the amount of loss caused by the defendant. U.S.S.G. § 2B1.1(a) & (b); PSR at ¶ 63. For purposes of § 2B1.1(b), loss is calculated as the greater of the actual or intended loss. Actual loss is defined as the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). And "reasonably foreseeable pecuniary harm" is further defined as that harm that the defendant knew, or under the circumstances, reasonably should have known, was a potential result of the offense. *Id.* cmt. n.3(A)(iii).

Intended loss, by comparison, includes any "pecuniary harm that was intended to result from the offense," including harm that was "impossible or unlikely to occur." *Id.* cmt. n.3(A)(ii). If the actual or intended loss cannot reasonably be determined, the Court may use the gain to the defendant as an alternative measure of loss. *Id.* cmt. n.3(B). Ultimately, this Court only needs to make a "reasonable estimate of the loss." *Id.* cmt. n.3(C); *see United States v. Rice*, 699 F.3d 1043, 1049 (8th Cir. 2012).

In their plea agreement, Wood and the government stipulated that "[d]uring the course of the conspiracy, a total of 49 victims sent a total of $62,011.17 to 'Smith.'" Filing 31 at 2. Initially, then, it would appear that the actual loss in this case, for Guideline purposes, is $62,011.17. However, if Wood's involvement only began in November 2010, then the loss figure would likely be lower. A defendant's relevant conduct does not include the conduct of other members of a conspiracy prior to the defendant's joining the conspiracy, even if the defendant knows of that conduct. *United States v. Cain*, 128 F.3d 1249, 1253 (8th Cir. 1997)

(citing U.S.S.G. § 1B1.3 n.2); *see also United States v. Rice,* 776 F.3d 1021, 1026 (9th Cir. 2015).

However, the timing of Wood's involvement in the conspiracy likely has no effect on his Guidelines sentence. And he does not appear to argue otherwise. The Guidelines call for a six-level increase for losses between $30,000 and $70,000, which is where Wood falls if the entire $62,011.17 is attributed to him. In order to have an effect on his Guidelines sentence, he would have to have been responsible for less than $30,000—a claim he has not made (at least explicitly).

Rather, Wood objects to the probation officer's determination that the much higher amount of intended loss should be used to determine Wood's offense level. The probation officer arrived at a total intended loss of $1,544,492. PSR at ¶ 52. This figure was based on the following calculations. The defendants caused 4,476 counterfeit money orders and cashier checks to be delivered, totaling $4,633,476. Smith's aim was to convince the victims to return the difference between the Craigslist item and the total value of the money orders sent. This was typically one-third to one-half of the total sent. Thus, the probation officer divided the total amount by 3, to arrive at a total intended loss of $1,544,492. PSR at ¶ 52.

Wood objects, arguing that the terms of the plea agreement should control. In addition to stipulating to the amount of actual loss, the parties agreed that the intended loss so far exceeded the actual loss that the actual loss should be used for all sentencing calculations. Filing 31 at 3. Wood has also moved for a downward departure under U.S.S.G. § 2B1.1 cmt n.20(C). That comment provides that there may be cases in which the offense level determined by a strict application of § 2B1.1 would substantially overstate the seriousness of an offense, and that in such circumstances a downward departure may be warranted. U.S.S.G. § 2B1.1 cmt n.20(C).

The Court tentatively finds that such circumstances are present in this case. The actual loss is at most $62,011.17, which is only 4 percent of the intended loss as calculated in the PSR. The actual loss represents a more reasonable measure of Wood's culpability. So, the Court tentatively finds that a departure under U.S.S.G. § 2B1.1 cmt n.20(C) is warranted. If the PSR had calculated Wood's offense level based on this amount of loss, then his base offense level would have been

increased by only 6 levels, rather than 16. *See,* U.S.S.G. § 2B1.1(b)(1)(D), (I); PSR at ¶ 64. The Court tentatively finds that a similar departure is warranted.

### C. Restitution

The PSR also calls for restitution in the amount of $62,011.17. In his initial objections submitted to the probation officer, Wood argued that because his involvement began later than January 2010, he should not be held responsible for restitution in the full amount of $62,011.17. *See* PSR at p. 21. Wood appears to have since withdrawn this objection, but the Court cannot be sure.[1] To the extent, then, that Wood's involvement did not begin until some later time, and to the extent he intends to persist in his objection regarding restitution, the Court makes the following tentative observations.

The Court can only order restitution when explicitly empowered to do so by statute. *United States v. Doering*, 759 F.3d 862, 866 (8th Cir. 2014). In this case, the Court's authorization comes from the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. Subject to two exceptions, restitution orders under the MVRA are limited to losses caused by the specific conduct that is the basis of the offense of conviction. *United States v. Chalupnik*, 514 F.3d 748, 752 (8th Cir. 2008). Therefore, restitution may be awarded only to the victims of the offense of conviction, and a victim may not be compensated for conduct unrelated to the offense of conviction, even if that unrelated conduct was the subject of criminal charges dismissed by the government in exchange for the defendant's guilty plea. *Chalupnik*, 514 F.3d at 752. Nor does it matter that conduct falling outside the offense of conviction might be considered "relevant conduct" under the Guidelines; that inquiry is broader than, and distinct from whether restitution may be ordered. See *United States v. Locke*, 643 F.3d 235, 247 n.7 (7th Cir. 2011).

The pertinent portion of the MVRA provides:

> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a

---

[1] The objections currently before the Court do not mention restitution. While Wood has objected to one PSR paragraph addressing restitution, PSR at ¶ 57, he has only objected to it insofar as it states his involvement began in January 2010. *See* filing 46 at 2.

- 5 -

> result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.
>
> (3) The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. § 3663A(a)(2)–(3).

In sum, restitution orders are limited to (1) losses caused by the specific conduct that is the basis of the offense of conviction; (2) cases which include as an element a scheme, conspiracy, or pattern of criminal activity, any losses caused by the defendant's criminal conduct in the course of that scheme, conspiracy, or pattern; or (3) restitution agreed to in a plea agreement.

The offenses to which Wood has pleaded guilty involve as elements both a scheme and a conspiracy. *See* 18 U.S.C. §§ 1341, 1343, and 1349. Even so, Wood is only liable for restitution directly and proximately caused by his conduct in that conspiracy, which does not include losses caused before he joined the conspiracy. *See United States v. Squirrel,* 588 F.3d 207 (4th Cir. 2009); *see also, Rice,* 776 F.3d at 1026; *Cain,* 128 F.3d at 1253.

However, the Court reads Wood's plea agreement as authorizing restitution of the full $62,011.17. Wood stipulated that "the Court may order restitution to *all victims*, not just those pertaining to the count of conviction." Filing 31 at 3 (emphasis supplied). And Wood stipulated that the conspiracy in this case involved 49 victims who incurred losses of $62,011.17. Filing 31 at 2. Thus, the Court tentatively finds that

- 6 -

regardless of when Wood became involved in the present conspiracy, restitution in the full amount of $62,011.17 is appropriate.

### D. Mitigating Role Adjustment

Wood has also objected to the PSR's recommendation regarding an adjustment for his role in the offense under U.S.S.G. § 3B1.2. That Guideline provides for a two-level decrease in the offense level if the defendant was a "minor participant" and a four-level decrease for "minimal" participants. U.S.S.G. § 3B1.2. The probation officer recommended that Wood receive a two-level downward adjustment. PSR ¶¶ 56, 67. But Wood contends that he is entitled to the full four-level adjustment. The full four-level adjustment only applies to defendants who are "plainly among the least culpable." U.S.S.G. § 3B1.2 cmt. n.4. It is the defendant's burden to establish that a minor or minimal participant reduction is warranted. *United States v. Gayekpar*, 678 F.3d 629, 639 (8th Cir. 2012). And even if a defendant is less culpable than some other participants, an adjustment is not warranted if he was nonetheless "deeply involved" in the offense. *United States v. Rodriguez-Ramos*, 663 F.3d 356, 366 (8th Cir. 2011). Cognizant of these principles, the Court will resolve this issue at sentencing

### E. Motion for Variance and Remaining Grounds for Departure

Wood has moved for a downward departure, citing U.S.S.G. §§ 5H1.1 (age), 5H1.4 (physical condition), and 5H1.6 (family ties and responsibilities). Filing 49. Wood has also moved for a variance, citing these and other factors. Filing 50. The Court tentatively finds Wood's motion for departure on these grounds to be without merit; but will resolve this matter at sentencing. Wood's motion for a variance will likewise be resolved at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the

      submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.    Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.    Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 1st day of April, 2015.

                BY THE COURT:

                */s/ John M. Gerrard*
                John M. Gerrard
                United States District Judge